UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

KEITH M. B.,[1]

                              Plaintiff,                      **DECISION AND ORDER**

v.

                                                                1:20-cv-01257 (JJM)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

        This is an action brought pursuant to 42 U.S.C. §405(g) to review the final determination of the Commissioner of Social Security that plaintiff was not entitled to disability insurance benefits ("DIB"). Before the court are the parties' cross-motions for judgment on the pleadings [14, 16].[2] The parties have consented to my jurisdiction [19]. Having reviewed their submissions [14, 16, 18], plaintiff's motion is granted.

## BACKGROUND

        The parties' familiarity with the 1,287-page administrative record [12, 13] is presumed. Further, the parties have comprehensively set forth in their papers plaintiff's treatment history and the relevant medical evidence. Accordingly, I refer only to those facts necessary to explain my decision.

---

[1]     In accordance with the guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, which was adopted by the Western District of New York on November 18, 2020 in order to better protect personal and medical information of non-governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]     Bracketed references are to the CM/ECF docket entries. Page references to the administrative record are to the Bates numbering. All other page references are to the CM/ECF pagination.

After plaintiff's claim was initially denied ([12] at 19), an administrative hearing was held on May 31, 2019 before Administrative Law Judge ("ALJ") Brian Battles. See id. at 40-78 (transcript of hearing). On June 20, 2019, ALJ Battles issued a decision finding that plaintiff was not disabled. Id. at 19-34. Following an unsuccessful request for review with the Appeals Council (id. at 1-4), plaintiff initiated this action.

ALJ Battles found that plaintiff's severe impairments were "chronic obstructive pulmonary disease (COPD); chronic heart failure with shortness of breath; obesity; bilateral knee disorder; degenerative disc disease; diabetes mellitus; anxiety disorder; and intellectual disability".[3] Id. at 22. He also determined that plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with additional limitations:

> "[T]he claimant has the residual functional capacity to perform sedentary work . . . except the claimant can occasionally balance, stoop, kneel crouch, and crawl; occasionally climb ramps or stairs but never climb ladders, ropes, and scaffolds; never work in an area that has concentrated exposure to extreme heat, cold, or humidity; never work in an area that has very high concentrations of dust, fumes, gases, and other pulmonary irritants; can perform simple, routine, repetitive tasks; can work in a low stress job, defined as making only occasional decisions and tolerating only occasional changes in the work setting; and must be in a position that, in addition to normal breaks, would allow the person to stand for five minutes after sitting for 30 minutes throughout the workday while remaining at the work station."

Id. at 26.

To support his RFC findings concerning plaintiff's non-exertional limitations, ALJ Battles considered opinions regarding plaintiff's functional limitations from several sources: 1) consultative examiner Gregory Fabiano, Ph.D.; 2) consultative examiner Gina Zali, Psy.D.; 3)

---

[3] ALJ Battles also considered, but rejected for purposes of this step of the sequential evaluation, evidence of "obstructive sleep apnea, gout, an acute kidney injury, and hyperlipidemia". [12] at 22. Plaintiff does not challenge ALJ Battles' findings concerning his severe impairments.

student intern Taryn Torrier, Psy.D.; and 4) state agency psychological consultant T.[4] Bruni, Ph.D. Id. at 30-32.

ALJ Battles found persuasive the opinions Dr. Fabiano (except in the domain of relating to others, discussed below) and Dr. Bruni concerning plaintiff's mental functioning. Because plaintiff's arguments focus on ALJ Battles' treatment of Dr. Fabiano's opinion (see Plaintiff's Memorandum of Law [14-1] at 8-13), I focus on that opinion here. Dr. Fabiano found plaintiff moderately limited in:

- "his ability to understand, remember, or apply simple and complex directions and instructions";
- "using reason and judgment to make work related decisions";
- "his ability to maintain concentration, perform a task at a consistent pace, and sustain an ordinary routine and regular attendance";
- "his ability to regulate his emotions, control behavior, and maintain wellbeing"; and
- "his awareness of normal hazards and taking appropriate precautions".

Administrative Record [12] at 31, 598. Dr. Fabiano also found plaintiff had "mild to moderate" limitations "in his ability to maintain personal hygiene and appropriate attire". Id. Dr. Fabiano also noted:

> "There does appear to be a history of intellectual disability and there does appear to be current functional impairment in adaptive functioning which may warrant a diagnosis of mild intellectual disability once all previously collected data are reviewed. The claimant would be a good candidate for vocational training."

Id. at 599. Dr. Fabiano concluded that plaintiff's prognosis was "guarded", given plaintiff's "historical learning problems and his reliance on his father for social support and guidance

---

[4]   Dr. Bruni's first name does not appear in the record.

through daily activities". Id.  Dr. Fabiano also opined that plaintiff "will not be able to manage his own funds due to the difficulty he had on tasks related to memory, attention, concentration, and mathematical calculations".  Id.  ALJ Battles found these opinions "persuasive" because they were "supported by the findings of impaired memory, a low IQ score, impaired concentration, anxious moods, and fair to poor insight".  Id. at 31.  Elsewhere in his decision, ALJ Battles cited the various IQ scores in the record ranging from 52 to 71 on various tests.  See id. at 28-29, 30.

Dr. Fabiano found that plaintiff had no limitations in his ability to interact with others.  Administrative Record [13] at 598.  ALJ Battles found this portion of Dr. Fabiano's opinion "not persuasive" because it "is not consistent with the claimant's testimony to the alternative".  Administrative Record [12] at 35.  At step four of his analysis, ALJ Battles found that plaintiff had "mild limitations" in this functional domain.  Id. at 23.

**ANALYSIS**

A.   **Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quoting 42 U.S.C. § 405(g)).  Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion".  Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938).  It is well settled that an adjudicator determining a claim for DIB and/or SSI employs a five-step sequential process.  Shaw, 221 F.3d at 132; 20 C.F.R. §§ 404.1520, 416.920.  The plaintiff bears the burden with respect to steps one through four, while the Commissioner has the burden at step five.  See Talavera v. Astrue, 697 F.3d 145, 151 (2d. Cir. 2012).

Plaintiff argues that the RFC is not supported by substantial evidence because ALJ Battles did not "explain why he did not adopt all of [Dr. Fabiano's] limitations when making the mental RFC determination". Plaintiff's Memorandum of Law [14-1] at 9. Specifically, plaintiff argues that ALJ Battles' finding that plaintiff could perform "simple, routine, repetitive tasks" and "work in a low stress job, defined as making only occasional[ ] decisions and tolerating only occasional changes in the work setting" failed to take into account the limitations Dr. Fabiano opined in plaintiff's ability to understand, remember, or apply simple directions; use reason and judgment to make work-related decisions; sustain concentration and perform tasks at a consistent pace; sustain an ordinary routine and regular work attendance; regulate his emotions, control his behavior, and maintain his well-being; and be aware of normal hazards and take appropriate precautions. Id. at 11-12.

**B.     ALJ Battles Failed to Support the RFC with Substantial Evidence**

An ALJ is "duty-bound to review all of the evidence before her, resolving inconsistencies, and make a disability determination that is consistent with the evidence as a whole". Rice v. Commissioner, 2020 WL 4283894, *4 (W.D.N.Y. 2020). Where an ALJ's decision "gives no clue" how the RFC "accommodates or takes into account . . . moderate mental limitations", the ALJ's findings at steps 4 and 5 of the sequential analysis are "unsupported by substantial evidence". Reynolds v. Colvin, 2014 WL 4184729, *5 (N.D.N.Y. 2014).

Here, ALJ Battles did not explain how his RFC accounted for each of the moderate limitations in Dr. Fabiano's opinion, or the mild limitations ALJ Battles found in plaintiff's ability to relate to others. The Commissioner urges affirmance because the Second Circuit has held that "moderate limitations in work related functioning does not significantly limit, and thus prevent, a plaintiff from performing unskilled work". Commissioner's Brief [16-

1] at 26.  The Second Circuit's language has not, however, been so sweeping.  The cases cited by the Commissioner did not involve plaintiffs with limitations in every domain of mental functioning, as found here by ALJ Battles, and opined by Dr. Fabiano.  Nor did they involve a plaintiff found to have an intellectual disability in addition to a mental health condition.  For example, in Zabala v. Astrue, 595 F.3d 402 (2010), a state agency consultant found that plaintiff had:

> "moderate limitations in activities of daily living and social functioning, marked limitations in her ability to understand, remember, and carry out complex instructions, but no limitations in understanding, remembering, and carrying out simple instructions or making simple work-related decisions."

Id. at 405.  Evidence from her treating providers indicated that when she received treatment for symptomatic episodes, her condition improved with medication.  Id. at 405-06.  The ALJ found that the plaintiff was not disabled because she could perform unskilled jobs that existed in significant numbers in the national economy.  Id. at 407.  The Second Circuit rejected plaintiff's argument that the ALJ's determination was not supported by substantial evidence, reasoning that "[n]one of the clinicians who examined her indicated that she had anything more than moderate limitations in her work-related functioning, and most reported less severe limitations".  Id. at 410.

The Second Circuit made a similar determination in in Whipple v. Astrue, 479 Fed. Appx. 367 (2d Cir. 2012) (Summary Order).  There, the ALJ found that plaintiff had "mild limitations in daily living activities; moderate limitations in social functioning and concentration, persistence, or pace; and only one reported instance of decompensation".  Id. at 369.  The ALJ concluded that, despite plaintiff's impairments, he was able to perform "a job with simple tasks

in a low-stress environment". The Second Circuit rejected plaintiff's argument that the ALJ's RFC determination was not supported by substantial evidence:

> "Contrary to Whipple's representations, the ALJ did consider the observations and opinions of Dr. Kristen Barry, who examined Whipple at the Social Security Administration's request, and Dr. Thomas Harding, who independently reviewed Whipple's medical records. The ALJ, however, concluded that Barry's and Harding's testimony showed that Whipple was only mildly and moderately impaired by his depression and anxiety, and that their views ultimately supported the determination that Whipple was capable of performing work that 'involved simple tasks and allowed for a low-stress environment.'"

Id. at 370. In addition, medical evidence from plaintiff's treating provider included observations that that plaintiff "was capable of working and that Whipple's depression and anxiety were manageable with medication".

Finally, in Saxon v. Colvin, 2015 WL 3937206 (W.D.N.Y. 2015), where the ALJ limited plaintiff to "simple, repetitive, and routine tasks, in a low contact, low stress environment" (id. at *5) this court found:

> "The RFC assessment and determination of some non-exertional limitations are consistent with the plaintiff's medical records from Horizon Health Services. Those records indicate that plaintiff functions fairly well as long as he maintains his treatment regimen and takes his medications . . . The ALJ considered the functional limitations suggested by the medical evidence, including plaintiff's moderate limitation in the ability to learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others, and deal with stress. These limitations are incorporated in the RFC, which limits plaintiff to simple routine tasks in a low stress, low contact environment. Accordingly, the court finds that the ALJ properly considered the evidence and provided an adequate explanation for his RFC determination."

Id. at *6.

All three cases are distinguishable from the record here. Unlike all three of these cases, plaintiff's severe impairments here include "intellectual disability" in addition to a mental health condition (anxiety disorder). Accordingly, plaintiff's impairments are of a different nature than those of the plaintiffs in Zabala, Saxon, and Whipple, all of which had conditions that improved with medication. In addition, none of the plaintiffs in those cases had limitations in their ability to understand, remember, or apply simple directions and instructions. The courts' opinions in Zabala, and Saxon, therefore, that a limitation to simple work accounts for up to moderate limitations in a plaintiff's ability to perform complex tasks or execute complex instructions, are inapplicable to the specific limitations opined here. Because a person's ability to perform work involving only "simple" tasks could be affected by a moderate limitation in one's ability to execute simple directions and instructions, ALJ Battles was required to explain how the limitations in his RFC accounted for Dr. Fabiano's "persuasive" opinion that plaintiff was limited in this domain of functioning, or, why he rejected that portion of Dr. Fabiano's opinion in crafting the RFC.

Similarly, the plaintiffs in Zabala, Saxon, and Whipple, were not limited in their ability to "sustain an ordinary routine and regular attendance". Administrative Record [12] at 35. Here, given the vocational expert's testimony, ALJ Battles' analysis of this issue could be critical to the outcome of this claim. See Cosnyka v. Colvin, 576 Fed. Appx. 43, 46 (2d Cir. 2014) (Summary Order) ("[t]here is no evidence in the record to the effect that Cosnyka would be able to perform sedentary work if he could take a six-minute break every hour, rather than some other duration and frequency amounting to ten percent of the workday"). The Vocational Expert testified upon questioning from ALJ Battles:

> "Q.    [A]nd for a final hypothetical, I'd ask that you further
> assume the same hypothetical individual with the limitations from

>the previous hypotheticals, and again still at the sedentary exertional level.
>
>Cannot attend to work tasks without frequent interruptions such that the individual would be absent from work on a regular and consistent basis more than two days a month, or would be off task in excess of 20 percent of time in an eight hour workday in addition to regularly scheduled breaks.
>
>And with these additional limitations in mind, in your opinion, could such an individual sustain competitive employment in the national economy?
>
>A.  No, Judge, that would preclude employment.
>
>Q.  All right.  And in your opinion, what are the tolerances both for the off task as well as the absenteeism?
>
>A.  Generally, Judge, it's not more than one day absent per month is tolerated or more than five percent off task that is tolerated."

Administrative Record [12] at 73-74.

To the extent that ALJ Battles found that plaintiff's moderate limitation in his ability to "sustain an ordinary routine and regular attendance" would result in less than one absence per month and being off task less than five percent of the time, he was obligated to explain his reasoning, as this issue could be determinative of his claim.  See Reynolds v. Colvin, 2014 WL 4184729, *5 (N.D.N.Y. 2014) ("ALJ Gale provides no rationale whatsoever for deciding that a 10% diminution in mental capacity for ordinary work activities is 'significantly greater' than the moderate mental limitations he found at Steps 2 and 3, and again in his assessment of Reynolds's residual functional capacity.  A reviewing court, therefore, cannot decide whether the ultimate decision is supported by substantial evidence or not.  In such circumstance, it must remand the action for clarification.").

Finally, none of the cases cited by the Commissioner addresses how a moderate limitation in being aware of hazards and taking appropriate precautions in the workplace is addressed by a limitation to simple, routine, repetitive work in a low stress setting.

Because ALJ Battles did not specifically discuss how his RFC addressed all of plaintiff's limitations, I cannot determine whether or how he intended for the RFC to address them. Accordingly, while the RFC *may* have accounted for these limitations, ALJ Battles has not explained how. Nor has the Commissioner demonstrated that, as a matter of law, this court may presume that the RFC adequately addresses plaintiff's non-exertional limitations in every domain of mental functioning.

"As a general matter, the ALJ is not obligated to reconcile explicitly every conflicting shred of medical testimony, and there is no absolute bar to crediting only portions of medical source opinions." Raymer v. Colvin, 2015 WL 5032669, *5 (W.D.N.Y. 2015). "However, where the ALJ's RFC assessment conflicts with an opinion from a medical source, the [ALJ] must explain why the opinion was not adopted. Thus, when an ALJ adopts only portions of a medical opinion, he must explain why he rejected the remaining portions." Felicia A. v. Commissioner of Social Security, 2021 WL 2153878, *2 (W.D.N.Y. 2021).

Although I agree with the Commissioner that there is not necessarily a gap in the medical evidence, given Dr. Fabiano's comprehensive opinion (*see* Commissioner's Brief [16-1] at 26-27), there remains a gap in ALJ Battles' reasoning. Remand is therefore necessary for him to properly explain how the RFC accounts for the limitations expressed in Dr. Fabiano's persuasive opinion, and plaintiff's limitations interacting with others. If necessary, the ALJ must further develop the record concerning these limitations and their effect on plaintiff's ability to function in a work setting.

## CONCLUSION

For the reasons stated above, plaintiff's motion for judgment on the pleadings [14] is granted to the extent that this matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order, and the Commissioner's motion for judgment on the pleadings [16] is denied.

**SO ORDERED**.

Dated: July 26, 2022

/s/   Jeremiah J. McCarthy
JEREMIAH J. McCARTHY
United States Magistrate Judge